OPINION OF THE COURT
Shlomo S. Hagler, J.
*1039 Plaintiff K.S. Finance Corporation (KSFC or plaintiff) commenced this action pursuant to an expedited procedure provided by CPLR 3213 (summary judgment in lieu of complaint) to recover on two checks in the sums of $8,000 and $6,000 dated November 14 and 15, 2005, respectively. (See motion, exhibit A.) Defendant opposes the motion.
Background
The drawer of the checks was the defendant A.R.B. Inc. and the payee was Bitna Production Inc. Bitna cashed the checks at plaintiff’s check cashing facility. Plaintiff remitted to Bitna $14,000 which represented the full amount of the checks. Plaintiff deposited the checks. The checks were then dishonored because defendant stopped payment. (See motion, exhibit A.)
Summary Judgment in Lieu of Complaint
“CPLR 3213 provides that a creditor in an action on ‘an instrument for money only’ . . . may proceed by summons and motion for summary judgment without the necessity of formal pleading. The justification for this expedited procedure is that such obligations are presumptively valid, and holders of them, in the absence of questions of fact as to authenticity or default, should not be subject to the delay occasioned by formal pleading (Interman Ind. Prods, v R. S. M. Electron Power, 37 NY2d 151, 154-155; Seaman-Andwall Corp. v Wright Mach. Corp., 31 AD2d 136). When the instrument itself calls for something more than the payment of money, however, the 3213 motion for summary judgment will be denied and the parties directed to plead (see Jones v CHC Ind., 63 AD2d 1119; Wagner v Cornblum, 36 AD2d 427, 428-429 and cases cited therein).” (Logan v Williamson & Co., 64 AD2d 466, 468-469 [4th Dept 1978], appeal dismissed 46 NY2d 996 [1979].)
A check is “an instrument for the payment of money only.” (CPLR 3213.) Any defenses to the underlying transaction between the parties which serve as a basis to stop payment of the checks do not alter the character of the checks as instruments for the payment of money only or prevent the use of the CPLR 3213 procedure. (First Inter-County Bank of N.Y. v DeFilippis, 160 AD2d 288, 289 [1st Dept 1990].) Under these circumstances, this court must then look to the substantive grounds raised in the opposition to the motion for summary judgment to determine whether defendant raised a triable issue of fact.
*1040 Argument
While defendant apparently concedes that plaintiff is a “holder in due course” of the checks pursuant to Uniform Commercial Code § 3-305, it argues that it meets one of the exceptions or defenses — “illegality of the transaction” — carved out in UCC 3-305 (2) (b). The illegality allegedly flows from Labor Law § 345-a (1) and § 348 as fully described below. Plaintiff counters that the “illegality of the transaction” exception or defense is inapplicable herein because the alleged illegality may only cause the contract to be merely voidable and not void.
Holder in Due Course (UCC 3-305)
A holder in due course generally takes an instrument free from all claims and defenses with limited exceptions set forth in UCC 3-305 as follows:
“To the extent that a holder is a holder in due course he takes the instrument free from
“(1) all claims to it on the part of any person; and
“(2) all defenses of any party to the instrument with whom the holder has not dealt except
“(a) infancy, to the extent that it is a defense to a simple contract; and
“(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and
“(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
“(d) discharge in insolvency proceedings; and
“(e) any other discharge of which the holder has notice when he takes the instrument.” (Emphasis added.)
UCC 3-305, Comment 6 explains the “illegality” exception or defense as follows:
“Illegality is most frequently a matter of gambling or usury, but may arise in many other forms under a great variety of statutes. The statutes differ greatly in their provisions and the interpretations given them. They are primarily a matter of local concern and local policy. All such matters are therefore left to the local law. If under that law the effect of the duress or the illegality is to make the *1041 obligation entirely null and void, the defense may be asserted against a holder in due course. Otherwise it is cut off.”
Defendant opines that Labor Law § 345-a (1) and § 348 fit this exception or defense. Labor Law § 345-a (1) provides as follows:
“A manufacturer or contractor who contracts or subcontracts with another manufacturer or contractor for the performance of any apparel industry service within the meaning of subdivision (c) of section three hundred forty of this article and who knew or should have known with the exercise of reasonable care or diligence of such other manufacturer’s or contractor’s failure to comply with article six [payment of wages] or nineteen [Minimum Wage Act] of this chapter in the performance of such service shall be liable for such failure.”
Labor Law § 348 prescribes, inter alia, civil and criminal penalties for a violation of certain provisions of the Labor Law.
A.R.B.’s treasurer Debra Dowden avers that Bitna’s principal asked A.R.B. for an advance of $14,000 because “Bitna was having difficulty paying its employees.” (Dowden affidavit 11 4, Mar. 1996, in opposition to motion.) After giving Bitna the checks, Dowden states that she was
“visited by several members of the Labor Department’s special task force for the apparel industry, who advised me: that Bitna had not paid its production employees; that defendant was responsible for these wage payments; and that any payments to Bitna with knowledge of its nonpayment of wages owed to production employees would be illegal under the provisions of the Labor Law.” (Id. 1i 5.)
Dowden states that A.R.B. was directed to pay the New York State Commissioner of Labor $44,945.02 as payment of the wages owed to Bitna’s production employees. (Id. 1i 6; see Dow-den affidavit, exhibit A.) A.R.B. then stopped payment on the checks.
To declare the obligation void, the Labor Law provisions must clearly declare it void. This basic principle has been eloquently stated by the Appellate Division, First Department, as follows:
“This case is an authority, so strong as to be controlling, that, where the statute itself does not make a contract void but simply prohibits the act, or where the contract is only void as a matter of public policy, the usages of trade and the necessity for *1042 protection to negotiable instruments require that the contract should be enforced. To hold that a contract not made void by statutory declaration could be defended as against a bona fide purchaser, either because of statutory illegality, or because of illegality by reason of fraud or other offenses mala in se, would be a serious embarrassment to the use of these instruments as they are commonly used in trade, as representing actual money . . .
“In order to make contracts, whether mala in se, or mala prohibita void ab initio, a statutory declaration to that effect is necessary; and, without that statutory declaration, which does not here exist, the note is good in the hands of a bona fide purchaser.”
(New Howard Mfg. Co. v Cohen, 207 App Div 588, 591-592 [1st Dept 1924].)
A federal court interpreting the illegality exception or defense reiterated the above principle and provided the underlying rationale as follows:
“Once more, the Restatement of Contracts offers a concise explanation. Comment (a) to § 598 states that when a plaintiff sues to recover on an illegal bargain, courts deny relief because the Plaintiff is a wrongdoer, not because they favor the defendant. Courts will not aid a person ‘who founds his cause of action upon his own immoral or illegal act’. Restatement of Contracts § 598, Comment (a) (1932); See also Restatement (Second) of Contracts, Tent. Dr. No. 23, Introductory Note to Ch. 14, p. 46 (1977); 14 Williston on Contracts § 1630A (3d ed. 1972). This rationale is precisely the policy articulated in the New York decisions. In McConnell the court said that the court’s concern is not with the position of the defendant; instead, the question is whether the plaintiff should be denied a recovery for the sake of public interests. 7 N.Y.2d at 469, 166 N.E.2d at 496, 199 N.Y.S.2d at 485. The well-known maxim that no one shall be permitted to profit by his own fraud summarizes the policy. See Riggs v. Palmer, 115 N.Y. 506, 511-12, 22 N.E. 188, 190 (1889) . . .
“Where an innocent third party, such as a holder in due course, is suing upon an illegal contract, the policy argument is inapplicable because the plaintiff has done no wrong for which it should be penalized. Moreover, insofar as it is enforcing the rights of an *1043 innocent party, the court does not blacken its name or participate in a wrong when it enforces an illegal contract. See Havighurst, Book Review, 61 Yale L.J. 1138, 1145 (1952).” (Bankers Trust Co. v Litton Sys., Inc., 599 F2d 488, 492-493 [2d Cir 1979] [emphasis added].)
In this case, A.R.B. cannot demonstrate that the alleged illegality caused the obligation to be void rather than voidable. In fact, much of A.R.B.’s assertions that Bitna did not pay its production employees and defendant was responsible for such wages is either conclusory or unsupported by direct evidence. (Arnold v New York City Hous. Auth., 296 AD2d 355, 356 [1st Dept 2002]; see also, Wilbur v Wilbur, 266 AD2d 535, 536 [2d Dept 1999]; Bendik v Dybowski, 227 AD2d 228 [1st Dept 1996].)
Moreover, in order to be in violation of Labor Law § 345-a (1), A.R.B. must necessarily concede that it “knew or should have known with the exercise of reasonable care or diligence of such . . . contractor’s [Bitna’s] failure to comply with article six or nineteen of this chapter [payment of wages or Minimum Wage Act].” Without this concession, there could be no civil or criminal penalties assessed against A.R.B. under Labor Law § 348. As such, the maxim that no one shall be permitted to profit by his or her own wrongdoing may apply to both Bitna and A.R.B., if it can be shown that A.R.B. was legally cognizant of Bitna’s nonpayment of its production employees. Ironically, A.R.B.’s payment of Bitna’s employees caused its obligations vis-a-vis Bitna to be in complete compliance with Labor Law § 345-a (1). This is a clear indication that such violation of the Labor Law could only cause the obligation to be voidable rather than void.
“[T]he holder in due course is protected not because of his praiseworthy character, but to the end that commercial transactions may be engaged in without elaborate investigation of the process leading up to the contract or instrument and in reliance on the contract rights of one who offers them for sale or to secure a loan. Gilmore, The Commercial Doctrine of Good Faith Purchase, 63 Yale L.J. 1057 (1954); See Note 4, Supra. Abrogation of the rights of a holder in due course is not warranted in this case.” (Bankers Trust Co. v Litton Sys., Inc., 599 F2d at 494.)
*1044 Conclusion
Based on the foregoing, this court grants plaintiffs motion for summary judgment in lieu of a complaint. The clerk is directed to enter a judgment in favor of plaintiff and against defendant in the sum of $14,000 with statutory interest from November 15, 2005, plus costs and disbursements of this action.